IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mark Lee Frasier, | ) CIVIL ACTION NO. 9:17-0221-BHH-BM |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Carolina Center for Occupational Health, Nurse Morris, Nurse Phillips, and Nurse Rojas, | ) |
| Defendant. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983.[1] Plaintiff who at the time this action was filed was a pre-trial detainee at the Charleston County Detention Center,[2] alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion to dismiss and/or for summary judgment on July 11, 2017. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 13,

---

[1] 42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

[2] Plaintiff is now incarcerated with the South Carolina Department of Corrections (SCDC). See Court Docket Nos. 31, 40.

1

2017, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion could be granted, thereby ending his case.

However, notwithstanding the specific warning and instructions as contained in the Court's Roseboro order, Plaintiff failed to ever file any response in opposition to the Defendants' motion, or indeed to contact the Court in any way. The Defendants' motion is now before the Court for disposition.[3]

**I.**

Initially, as Plaintiff failed to respond to the Defendants' motion for summary judgment or to contact the Court in any way, notwithstanding the specific warning and instructions as set forth in the Court's Roseboro order, the undersigned finds that Plaintiff meets all of the criteria for dismissal under Chandler Leasing Corp. . Lopez, 669 F.2d 919 (4th Cir. 1982).[4] Accordingly, this action should be dismissed for lack of prosecution. See Davis v. Williams, 588 F.2d 69, 70 (4th Cir. 1978); Rule 41(b), Fed.R.Civ.P.[5]

---

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C. The Defendants have filed a motion to dismiss or for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4]He is personally responsible for proceeding in a dilatory fashion, the Defendants are suffering prejudice due to having to expend time and resources on a case in which the Plaintiff is unresponsive, and no sanctions other than dismissal appear to exist as the Plaintiff is indigent (and therefore not subject to monetary sanctions) and he has otherwise failed to respond to Court filings despite Court orders requiring him to do so. Lopez, 669 F.2d at 920.

[5]After a litigant has received an explicit warning as to the consequences of failing to timely comply with an order of a Magistrate Judge, and has failed to respond to that order, the district court
(continued...)

## II.

Even if Plaintiff's claims are not dismissed for failure to prosecute and are considered on the merits, the Defendants are still entitled to summary judgment in this case. First, Plaintiff's failure to respond to the motion for summary judgment by itself may be considered as a basis on which to grant the Defendants' motion. See Coker v. International Paper Co., No. 08-1865, 2010 WL 1072643, at * 2["[A] plaintiff can abandon claims by failing to address them in response to a summary judgment motion."]; Jones v. Danek Medical, Inc., No. 96-3323, 1999 WL 1133272 at * 3 (D.S.C. Oct. 12, 1999)["The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action."]. Moreover, the Defendants have provided probative evidence (discussed hereinbelow) showing that they are entitled to summary judgment in this case, while Plaintiff has failed to provide any evidence (although, in light of Plaintiff's pro se status, the undersigned has considered the factual allegations set forth in Plaintiff's verified Complaint as evidence in issuing the recommendation contained herein[6]) to support his allegations or to survive summary judgment. See Baber v. Hospital Corp. of America, 977 F.2d 872, 874–875 (4th Cir. 2991)[Once moving party establishes basis for summary judgment, to survive summary judgment the opposing party must respond with evidence showing a genuine issue for

---

[5](...continued)
may, under Fed.R.Civ.P. 41(b), dismiss the complaint based upon the litigant's failure to comply with that court order. See Simpson v. Welch, 900 F.2d 33, 35-36 (4th Cir.1990).

[6]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Since Plaintiff has filed a verified Complaint, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case, even though Plaintiff did not otherwise respond to Defendants' motion.

3

trial].

Plaintiff alleges that on or about June 27, 2015, while housed at the Charleston County Detention Center, he was placed in the "time out box". Plaintiff alleges that there was water on the floor in the time out box, and that he slipped and fell, catching himself with his fist. Plaintiff alleges that later that night he saw a "Nurse Jennings" because his hand had begun to swell up. Plaintiff alleges that he subsequently had x-rays taken, which showed he had two small bones broken in his right hand/pinky finger. Plaintiff alleges that he then asked to see an orthopedist to make sure that his hand healed up correctly, but that although he was placed on the "outside Dr. list for MUSC Orthopedic", he was not ultimately sent to the orthopedist until August 2015. Plaintiff alleges that he was then seen by "two doctors", both of whom told him that his hand had healed "improperly", with one telling him that he should nevertheless be able to use it regularly, while the other one told him he would need surgery. Plaintiff complains that it is now a year later, that his hand is becoming "more and more immobile", and that he now has a "physical deformity". See generally, Plaintiff's Complaint.

As noted, Plaintiff has not submitted any affidavits, medical documents, or any other evidence to support his claim that he was provided constitutionally deficient medical care for his injury. Conversely, in support of summary judgment, the Defendants have provided not just copies of numerous medical records and documents showing the medical care and treatment Plaintiff received, but also affidavits from two medical professionals attesting that the medical care Plaintiff received was within the applicable standard of care. Dr. Theodolph Jacobs attests in an affidavit that he is a licensed physician employed by the Defendant CCOH as the medical supervisor at the Charleston County Detention Center, and that Plaintiff presented to the infirmary on or about June

4

26, 2015 complaining of a swollen right hand following a fall. Dr. Jacobs attests that Plaintiff was evaluated and treated by a licensed practical nurse and given medication for his complaints of pain, and was then seen again the following day, where he was again assessed and treated by a licensed practical nurse. Dr. Jacobs attests that during his medical visits it was observed that Plaintiff had swelling in the area of the fourth and fifth digits of his right hand, but that he had active motion in all fingers. X-rays were taken, revealing that Plaintiff had an acute fracture to his fourth and fifth metacarpal bones. Plaintiff's hand was splinted, and an outside referral to MUSC Orthopedics was requested by PA Karen Huffman for further evaluation and treatment, if necessary. Dr. Jacobs attests that Plaintiff was thereafter examined again (by PA Huffman) two days later, on June 29, 2015, at which time the medical notes show that Huffman removed the splint and observed that Plaintiff had good range of motion in his fourth and fifth digits with moderate swelling. Plaintiff was diagnosed as having "Boxers" fractures, and his hand was placed in an ulnar gutter splint. Plaintiff was also prescribed some pain medication, with a followup x-ray ordered for July 20, 2015 and a followup visit in four weeks.

Dr. Jacobs attests that Plaintiff was thereafter transferred out of the Detention Center on July 7, 2015 to the custody of the South Carolina Department of Corrections. Although Dr. Jacobs attests that Plaintiff's transfer would have likely resulted in the automatic cancellation of any pending outside referrals (since he was no longer an inmate at the Detention Center), the appropriate documentation noting the fracture to Plaintiff's fourth and fifth digits as well as his current medications was sent to the SCDC upon his transfer. Dr. Jacobs further attests, however, that for some unknown reason, Plaintiff was returned to the Detention Center the following day, July 8, 2015, at which time a new medical intake screening was performed and the request for him to be

seen at MUSC Orthopedics was renewed. Dr. Jacobs attests that he himself wrote a cover letter to the doctor at MUSC on July 10, 2015 which would have accompanied the renewed referral request, and (according to the paperwork) MUSC Orthopedics then rescheduled Plaintiff's appointment for July 31, 2015.

Dr. Jacobs attests that over the course of the next few weeks Plaintiff inquired about his outside appointment, and was informed that his appointment was upcoming. Additionally, per PA Huffman's previous order, Plaintiff's right hand was again x-rayed on July 20, 2015, which showed no significant changes from the previous x-rays taken on June 27, 2015. Thereafter, Plaintiff was seen at MUSC on July 31, 2015 by Dr. Kyle Kokko. X-rays were again obtained, which showed a "healing fracture of the distal 4th and 5th metacarpal bones", which Dr. Jacobs attests confirmed PA Huffman's diagnosis of healing right Boxers' fracture. Dr. Kokko's treatment notes show that Plaintiff's condition was discussed with him, and Dr. Kokko opined that "[b]ased upon the physical exam, radiographic findings and [Plaintiff's] activities and expectations we have elected to proceed with conservative management, as [Plaintiff's] fracture has radiographic signs of healing. He can come out of the brace and start ROM (range of motion) activities. No followup needed unless his pain worsens". See Court Docket No. 37-16, p. 4.

Dr. Jacobs concludes his affidavit by attesting that, in his clinical judgment, PA Huffman and the CCOH nursing staff responded, treated and managed Plaintiff's care reasonably, and well within the medical standard of care; that Plaintiff's medical issues were managed and treated appropriately in Dr. Jacobs' clinical judgment as a physician with thirty-five years experience; and that he has seen no evidence that any medical professional ever denied or otherwise ignored Plaintiff's need for medical care of which they were aware. See generally, Jacobs Affidavit.

PA Karen Huffman has also provided an affidavit wherein she attests that she is a graduate of the Medical University of South Carolina and is a certified physician assistant, employed by CCOH as a medical provider at the Charleston County Detention Center. PA Huffman attests to the same medical history and treatment of Plaintiff's complaint and condition as did Dr. Jacobs, including confirming that she requested an outside referral to MUSC Orthopedics for further evaluation and treatment of Plaintiff's hand, if necessary, as well as that she personally examined the Plaintiff on June 29, 2015. PA Huffman attests that on that date she observed moderate swelling over Plaintiff's 4th and 5th digits, that Plaintiff displayed good range of motion in these digits, that she diagnosed Plaintiff's fractures as a "Boxers" fracture, that she placed Plaintiff's hand in an ulnar gutter splint and prescribed him some pain medication, and ordered that a followup x-ray be taken on July 20, 2015. PA Huffman further confirms that Plaintiff was thereafter transferred out of the Detention Center on July 7, 2015 to the custody of the SCDC, but that when he was then returned the following day for unknown and unexpected reasons, a new medical intake screening was performed and the request for Plaintiff to be seen at MUSC Orthopedics was renewed. Plaintiff's appointment with MUSC Orthopedics was scheduled for July 31, 2015, and he was seen at MUSC Orthopedics that day by Dr.
Kyle Kokko.

PA Huffman attests that, in the interim, Plaintiff's right hand had been x-rayed again on July 20, 2015, which showed no significant change from the previous x-ray on June 27, 2015, while x-rays taken at MUSC on July 31, 2015 showed Plaintiff had a healing fracture of the distal 4th and 5th metacarpal bones. PA Huffman attests that this confirmed her diagnosis of a healing right Boxers fracture, and that following Plaintiff's examination at MUSC on July 31, 2015, Dr. Kokko

opined that Plaintiff's fracture was healing, that he could start range of motion activities, and that there was no need for followup unless his pain worsened.

PA Huffman attests that, in her clinical judgment, CCOH medical staff responded, treated and managed Plaintiff's care reasonably, and well within the medical standard of care, and that in her clinical judgment as a physician assistant with fifteen years experience, Plaintiff was treated appropriately. See generally, Huffman Affidavit.

In addition to these affidavits, the Defendants have submitted copies of numerous medical records showing and confirming the statements made in their affidavits with respect to the care and treatment Plaintiff received for his hand injury. See generally, Defendants' Exhibits 1 through 12 (including patient visit reports, x-ray results, referral requests, intake screening report, letter to MUSC from Dr. Jacobs, kiosk requests and responses, radiology report, and MUSC records).

In order for Plaintiff to avoid summary judgment and proceed with his claim for denial of medical care as a constitutional violation, the evidence must be sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. To the contrary, the evidence before this Court, including the affidavits from Plaintiff's medical professionals, Plaintiff's medical records, as well as Plaintiff's own statements in his filings and exhibits, shows that Plaintiff received continuous and ongoing treatment for his medical complaints. Plaintiff was regularly seen by nurses and nurse

practitioners, he received x-rays and radiographs, was prescribed pain medication for his complaints of pain, and was seen and evaluated by an orthopedic specialist. While Plaintiff obviously disagrees with the course of his medical treatment for his hand complaints, none of the medical evidence provided to this Court shows that any named Defendant, or any other medical personnel, were deliberately indifferent to Plaintiff's serious medical needs. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

Plaintiff's complaint is quite simply that he believes he should have been seen by an orthopedic specialist earlier in the process than he was. Even with respect to this assertion, however, Plaintiff has failed to show that any delay in his being seen at MUSC (assuming the court were to even find that there was an undue delay under the facts of this case) resulted in any constitutional violation, as the evidence fails to show he suffered any remedial injury as a result. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-1189 (11th Cir. 1994)["An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"], overruled in part by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002). The evidence reflects that the medical professionals involved in Plaintiff's case evaluated his condition and decided the type of care and treatment that was warranted based on their professional experience and judgment, and Plaintiff's mere lay disagreement with the opinions or diagnoses of these medical professionals, without any contrary *medical* evidence to show that any medical professional violated the requisite

9

standard of care, is not sufficient to maintain a §1983 deliberate indifference lawsuit. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]).

In sum, Plaintiff has presented no evidence, by way of medical records or findings or testimony from any medical professional, to show that the medical care and treatment he received was contrary to any established medical duty of care, and he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and testimonial evidence showing that Plaintiff was regularly seen and evaluated by medical personnel for his complaints, and which refute Plaintiff's claims. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Levy, 1997 WL 112833 at * 2 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"].

Plaintiff may, of course, pursue a claim in state court if he believes that the medical care provided to him constitutes malpractice. However, that is not the issue before this Court.

Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs, the standard for a constitutional claim, and Plaintiff's federal § 1983 medical claim should therefore be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 25, 2017
Charleston, South Carolina

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).